(No. 5093.   June 6, 1929.)

R. D. LEACH, Trustee, Appellant, v. W. J. HUNTER, Respondent.

[278 Pac. 218.]

Geo. D. McClintock, for Appellant.

Geraint Humpherys and B. W. Davis, for Respondent.

T. BAILEY LEE, J.—In 1924, plaintiff and appellant brought this suit, as trustee in bankruptcy of G. C. Gray, bankrupt, against W. J. Hunter, defendant and respondent, for an accounting, as a member of the partnership, Hunter & Gray. It was alleged that Gray and Hunter had been continuously conducting a partnership cattle business since the fall of 1897, neither dissolution nor accounting having been had.

At the close of the trial, leave of court was granted defendant to file his answer amended to conform to the proof, praying the cancelation of certain deeds, and quieting title to certain lands involved in the accounting sought. Such answer, though filed after a memorandum decision had been rendered, was regularly filed before the signing of the findings of fact, conclusions of law and final decree. It is earnestly contended that such answer was not permissible, since it was filed too late, and, further, injected new issues not framed at the date of trial. In answer to the first objection, we merely state that, until the signing of the final decree, the chancellor retains the cause before him, with full power to alter, change or modify whatever attitude he might theretofore have adopted. As to the second objection, it appears that on the day of the trial the plaintiff caused to be filed for record certain deeds from Hunter to Gray, clouding the title to lands involved in the accounting, and standing in Hunter's name. The defendant had no premonition that such deeds would be introduced; and his answer supported by proof shows that such deeds were wholly without consideration, and conditionally de-livered. The issues were, therefore, necessitated by plaintiff himself.

The record is a weary one, reciting a series of confidential and informal transactions by partners who kept no regular books, for over a space of fifteen years, and one of whom, Gray, having fallen into financial straits during the post-war deflation, was being assisted at every turn by his friend, Hunter. Aside from the multitudinous errors assigned, and the mass of patent inconsistencies and falsehoods,

certain controlling facts appear, found by the court and substantially supported by the evidence.

Gray, a banker, was heavily involved, and, to extricate his bank from impending failure, he proposed to sell Hunter his interest in the partnership, including all the real estate and personal property. As consideration, he was to receive from Hunter three $10,000 mortgages secured by the real estate conveyed; and Hunter was to assume the partnership indebtedness which included a $10,000 note held by the Montpelier bank, secured by a mortgage on Hunter's individual property. The transfers having been made, and the three notes and mortgages executed, Gray hypothecated the latter in his private business; and the four notes are still in the hands of third parties and unpaid, Hunter being primarily liable for the full sum of $40,000.

These facts are established and outstanding. Hunter continued to carry on the business under the partnership name; and the evidence discloses that in 1923 and 1924 Gray advanced the respective sums of $300 and $1,000 which appellant insists shows that the partnership relation had never been dissolved. In answer to this, it was testified by Hunter that at the time of the 1922 sale and purchase of Gray's interest, it was agreed that, if Gray's circumstances should improve, enabling him to take up the three notes, and assume his half of the partnership indebtedness, he would be permitted to return as a partner, and that, to this end, Hunter executed his deeds to the real estate formerly conveyed, with the understanding that they would have no effect and remain unrecorded, until Gray should have performed his agreement.

And, as hitherto noted, Gray never did record the deeds. That such an understanding was had between the partners was found by the court, and there is substantial evidence supporting it. It was shown that, in the fall of 1925, Hunter sold $6,000 worth of cattle. The appellant contends that these belonged to the undissolved partnership, but the court found upon positive testimony that they had been

bought with Hunter's individual funds, and were his own property.

As far as a determination of this cause is concerned, Gray's contributions and Hunter's withdrawals prior to the 1922 transaction are immaterial. The $40,000 agreement fully executed operated as an adjudication of all partnership accounts. If, subsequent thereto, Gray did in fact make the advances of 1923 and 1924 with a view of re-entering the partnership, the facts remain that he has never re-entered; that the mortgaged land is insufficient to discharge the mortgage liens, and that the partnership is insolvent. Hunter could never be put *in statu quo;* and under the slip-shod way of keeping accounts, the court found that no accounting was possible. Such advances as Gray may have made were not within the partnership.

Judgment affirmed. Costs to respondent.

Budge, C. J., and Givens, Wm. E. Lee and Varian, JJ., concur.